RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 12a0288p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

GERALD L. WERTH,

        *Petitioner-Appellant,*

    *v.*

THOMAS BELL, Warden,

        *Respondent-Appellee.*

No. 10-2183

Appeal from the United States District Court
for the Eastern District of Michigan at Ann Arbor.
No. 5:09-cv-11472—John Corbett O'Meara, District Judge.

Argued: July 24, 2012

Decided and Filed: August 28, 2012

Before: BOGGS, GILMAN, and DONALD, Circuit Judges.

———————————

## COUNSEL

———————————

**ARGUED:** Jeffrey A. Mandell, JONES DAY, Washington, D.C., for Appellant. Raina I. Korbakis, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee. **ON BRIEF:** Jeffrey A. Mandell, JONES DAY, Washington, D.C., for Appellant. Raina I. Korbakis, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee. Gerald L. Werth, Adrian, Michigan, pro se.

———————————

## OPINION

———————————

BOGGS, Circuit Judge. Gerald Werth, charged with robbing a Flint, Michigan convenience store, pleaded guilty to breaking and entering with the intent to commit larceny and to possession of burglar's tools. Before he pleaded guilty, however, Werth attempted no fewer than seven times to assert his Sixth Amendment right to self-representation. The trial court denied his request summarily the first six times. The

1

seventh time, the judge explained the nature of the charges against Werth, told him that she could not give him special training or treatment, and denied his request without giving him an opportunity to speak. Some three weeks later, the judge denied Werth's subsequent motion to withdraw his guilty plea, in which he argued that his plea was the product of duress because, among other things, the court would not let him proceed *pro se*. After being sentenced, Werth filed an application for leave to appeal.[1] Both the Michigan Court of Appeals and the Michigan Supreme Court denied his application in brief summary orders that referred to the merits of his claims. The district court, adopting a magistrate judge's recommendation, denied Werth's petition for a writ of habeas corpus. Applying AEDPA deference, it held that Werth waived his self-representation claim by pleading guilty. The district court granted a certificate of appealability on the question of whether the Michigan courts violated clearly established federal law in holding that a defendant may not challenge the denial of his request to represent himself, after entering a knowing and voluntary unconditional guilty plea. For the reasons that follow, we affirm.

I

Around 5:30 a.m. on November 7, 2007, someone broke into Khirfan's Blue Collar Market, a business located near a General Motors plant in Flint, Michigan. Investigation led to charging Werth with breaking and entering with the intent to commit larceny and with possession of burglar's tools. Because he had six prior felony convictions, Werth faced a maximum sentence of life in prison on each of the two counts. At arraignment, he pleaded not guilty to both, and the trial court set a final pretrial-motion cutoff date of February 8, 2008, and a trial date of February 13, 2008.

At the February 8 hearing, Werth began to ask for permission to represent himself, pursuant to *Faretta v. California*, 422 U.S. 806 (1975). He did so both in a

---

[1]Because he pleaded guilty, Werth was not entitled to an appeal as a matter of right under Michigan law.

written motion that he instructed his lawyer to file and orally in open court.[2]  Werth believed that Crystal Davidson, owner of the trailer in which both Werth and the stolen property were found, had "purged [sic] herself" during his preliminary examination, and Werth wanted his lawyer to subpoena cell-phone records as proof.  Werth's then-attorney, Roger Lange, did not understand the reason for his client's request, and took no action.  "[T]hat," Werth explained, "[is] why I want to represent myself."  The trial judge's reaction to this initial request was to probe why Werth wanted the phone records in the first place.[3]  The judge suggested that, if "we take care of the other issues that [Werth] wants raised," she did not need to address his request to represent himself.  Although Lange called Werth's request "a wild goose chase," the trial judge postponed the trial for sixty days to give Werth an opportunity to obtain Davidson's cell-phone records.  Still, Werth persisted in his self-representation request, telling the judge, "I do not want Mr. Lange representing me . . . .  I'll represent myself, your Honor."  This time, the judge responded: "You know what, there's a test involved.  And I don't think that you're going to meet the test."  After a brief discussion about the logistics of preparing a subpoena for Davidson's records, Werth, undeterred, told the court, "I want an adjournment because . . . I do want to present this [the phone records] to the Court and I do want to represent myself."  The court replied: "I'm not . . . . prepared to allow that to happen at this time."

After another delay related to cell-phone records, the court held a final pretrial conference on April 14, 2008.  There, Werth again asked to represent himself.  Again, his requests were both written and oral.  He sent a written "communication . . . to the Court entitled motion to grant speedy trial . . . . [that contained a] request[] to represent himself and . . . to withdraw his counsel in this case and represent himself in this matter."  Before the hearing, "[h]e indicated [to his then-attorney Mark W. Latchana] . . . that he wanted to tell the Court that he wanted to represent himself."  Attorney Latchana, in

---

[2]The written motion does not appear in the record, but Werth's attorney referred to a written motion "to dismiss me from the case" during the hearing.

[3]Werth's explanation suggests that he would have used the phone records to show that Davidson lied at the preliminary examination and thus had a propensity to lie.

response, "indicated to [Werth] that [he] would be happy to abstain [as his] counsel and assist him in whatever way [he] could." Then, during the hearing, Werth said to the court:

> I have a constitutional right and a state right to represent myself. Also, Michigan Court Rule 6.005 states that I have a right to court appointed counsel. I also have a right under that court rule to waive that counsel. Mr. Latchana has done nothing for me. There should have been motions filed into this Court all ready [sic]. I don't believe the prosecutor can make her case.

The judge's immediate response focused only on Werth's last statement about the sufficiency of the evidence against him. Werth, though, did not let the self-representation issue lie. He instead persisted, stating: "So, your honor, you're saying that I - - I can't exercise my constitutional right to represent myself." The following dialogue ensued:

> THE COURT: No, I'm not going to do it. Let me first tell you, I'm required under the court rule. As you're so familiar with it. So you understand that right--
> THE DEFENDANT: I'm not saying I'm familiar with it, your Honor. I just want to represent myself. I have that right. And I'm asking to exercise that right. That's all.
> THE COURT: That's only if I can count on you not to behave improperly and I can't.
> THE DEFENDANT: How am I going to--your Honor, I have a right to do this.
> THE COURT: Count one, let me go through this. Count one, breaking and entering a building with intent to commit a larceny. That's a felony. Maximum sentence by statute ten years. With sentence enhancement, life. Count two, possession of burglar tools, also a felony. Maximum statutory penalty ten years. With sentence enhancement, life. Those are the mandatory facts. You were on parole. The sentence must be consecutive to the sentence you're now serving. And then of course, as you're clearly aware, there are multiple risks involved with self representation including--
> THE DEFENDANT: And I'm willing to take those risks, your Honor.
> THE COURT: --lack of knowledge of the rules of evidence and the court rules. There are no ways that I can give you special training overnight. Nor can I give you any special treatment once we go to trial. You'd be held to the same standards [the prosecutor] is expected to do in here to with respect to the court rules and the rules of evidence. And the Court

is not in a position under the circumstances, to allow you to represent yourself. Now that's the ruling of the Court, denied.

Trial began the next day, Tuesday, April 15, 2008. On Wednesday, April 16, Werth decided to plead guilty. The plea agreement provided that, although Werth was guilty of both counts, he would be sentenced as though he were a "habitual offender two," not a "habitual offender four." This meant that Werth faced statutory-maximum sentences of fifteen years, not life, on each count. Before accepting the plea, the judge engaged Werth in a lengthy colloquy, explaining that the plea would act as a waiver of his rights to trial by jury, to be presumed innocent until proven guilty, to make the State prove his guilt beyond a reasonable doubt, to call witnesses in his favor and question witnesses against him, to remain silent, not to have his silence used against him, and to testify on his own behalf. The court also ensured that Werth understood that he could not claim that the plea "was the result of a promise or threat that was not disclosed right now on this record during this plea taking proceeding[.]" The court did not tell Werth that he would waive (or might be waiving) an appeal on his denial-of-self-representation claim if he pleaded guilty. After establishing a factual basis, the court accepted the plea, finding that the agreement was "made understandingly, voluntarily, accurately, and knowingly." The court scheduled sentencing for Monday, May 19.

In motions dated April 30, 2008, and May 6, 2008, Werth, *in propria persona*, and his counsel each moved to withdraw the guilty plea in separate motions. Werth's lengthy motion claimed that, because he was not allowed to represent himself and because Latchana did not comply with a number of requests concerning the presentation of his defense, he pleaded guilty "under duress." Latchana's motion argued that withdrawal of the plea would be in the interest of justice, and would cause the State no prejudice. The court denied the motions in a May 19, 2008 hearing.[4] It reasoned that the only sign of duress was "the fact that the evidence [at trial, which had started,] was proving to be overwhelming," and noted that "the Court has not heard one valid reason to allow [Werth] to withdraw his plea." As the judge finished her ruling, Werth

---

[4]The hearing on Werth's motion to withdraw his plea took place during the morning; his sentencing hearing took place in the afternoon.

interjected: "Your Honor, if you would give me the opportunity please to speak on my behalf so that I can also - -," to which the judge responded: "But I denied the motion. Thank you. I'll see you at 2:00 for sentencing."

The sentencing hearing went forward that afternoon, as scheduled. Before the judge imposed her sentence, she asked Werth if he wanted to speak. His only response was to ask whether "the[] reasons that [he] listed" in his *pro se* motion to withdraw guilty plea were "preserved for appeal."[5] The judge told him: "They are filed with the court file. It is the first thing in file and will be right under the judgment of sentence that will be filed after I finish here today." The judge asked if Werth had anything else to say. He reiterated: "I just want to make sure they are preserved for the appeal." The court imposed concurrent sentences of not less than forty-seven months and not more than fifteen years of imprisonment on count one, and not less than thirty months and not more than fifteen years of imprisonment on count two.

Werth filed a delayed application for leave to appeal on October 3, 2008. He claimed, through counsel, that the trial court abused its discretion by denying his motion to withdraw the guilty plea, violated his "constitutional, statutory, and rule-based rights to represent himself," and "erroneously denied [his] motion to withdraw his guilty plea . . . [because] the plea was the product of ineffective assistance of his attorney." The Michigan Court of Appeals "order[ed] that the delayed application for leave to appeal is DENIED for lack of merit in the grounds presented." Werth then filed a *pro se* application for leave to appeal in the Michigan Supreme Court, raising the same three arguments that the Court of Appeals found lacked merit. The Michigan Supreme Court denied the application because it was "not persuaded that the questions presented should be reviewed by this Court."

Werth filed this timely petition for a writ of habeas corpus in the United States District Court for the Eastern District of Michigan. He again raised the self-representation and ineffective-assistance-of-counsel claims that he pressed in state court.

---

[5]The first of the listed reasons was: "On February 8, 2008, this Court denied a request by the Defendant to act as his own Attorney, and represent himself at [t]rial."

A magistrate judge, applying the highly deferential standard of the Antiterrorism and Effective Death Penalty Act (AEDPA), recommended that the district court deny the petition. The magistrate judge reasoned that, although Werth had "a strong, if not meritorious, claim that he was denied his Sixth Amendment right to self-representation," Werth waived any such claim by entering a knowing and voluntary unconditional guilty plea. Werth's ineffective-assistance claim failed, the magistrate judge suggested, because Werth could establish neither deficient performance nor prejudice. The magistrate judge recommended granting a certificate of appealability for Werth's self-representation claim, but not his ineffective-assistance claim. Over Werth's objection, the district court adopted the magistrate judge's recommendation in full. Werth appeals, and asks for a certificate of appealability on his ineffective-assistance claim.[6]

II

At the threshold, we must decide which standard to apply to Werth's self-representation claim: *de novo* review or AEDPA deference. Under AEDPA,

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). However, "[w]here . . . the state court did not assess the merits of a claim properly raised in a habeas petition, the deference due under AEDPA does not apply." *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003).

We have, before, had occasion to address whether Michigan Court of Appeals and Michigan Supreme Court orders identical to the orders in this case qualify as

---

[6]Because we conclude below that the district court properly applied AEDPA deference, we decline to grant a certificate of appealability on Werth's ineffective-assistance claim.

adjudication "on the merits" under AEDPA. *See* 28 U.S.C. § 2254(d). In *Dorn v. Lafler*, the Michigan Court of Appeals denied a delayed application for leave to appeal "for lack of merit in the grounds presented," and the Michigan Supreme Court declined to hear the case "because it was not 'persuaded that the questions presented should be reviewed.'" 601 F.3d 439, 443 (6th Cir. 2010). We held:

> Because the state court may have various reasons for denying an application for leave to appeal "for lack of merit in the grounds presented," and we cannot discern from that language alone whether that decision was based on the merits of the case, we cannot conclude that it was an "adjudication on the merits" pursuant to 28 U.S.C. § 2254(d). Accordingly, de novo review is appropriate.

*Ibid.*

After *Dorn*, however, the Supreme Court decided *Harrington v. Richter*, 131 S. Ct. 770 (2011). *Harrington* resolved, *inter alia*, the question "whether § 2254(d) applies when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Id.* at 784. The Court explained that AEDPA

> refers only to a "decision," which resulted from an "adjudication." As every Court of Appeals to consider the issue has recognized, determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.

*Ibid.*[7] "Where a state court's decision is unaccompanied by an explanation," the Court continued, "the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Ibid.* Furthermore, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principle to the contrary." *Id.* at 784–85. In sum, the

---

[7]The Supreme Court cited our decision in *Harris v. Stovall*, 212 F.3d 940, 943, n.1 (6th Cir. 2000), to support this proposition. It did not note the potential conflict between *Harris* and our holding in *Dorn*.

Court held, "§ 2254(d) does not require a state court to give reasons before its decision can be deemed to have been adjudicated on the merits." *Id.* at 785.

We have not yet addressed *Harrington*'s impact on *Dorn*. Of course, the general principle that we review *de novo* a claim properly presented in a habeas petition, but not addressed on the merits by a state court, is good law. *See Maples*, 340 F.3d at 436. However, absent some "indication or [Michigan] procedural principle to the contrary," we must presume that an unexplained summary order is an adjudication "on the merits" for AEDPA purposes. *Harrington*, 131 S. Ct. at 785. *Dorn* took precisely the opposite tack. It reasoned that *de novo* review was appropriate *because* the Michigan courts' denial could have been for reasons unrelated to the merits. *Dorn*, 601 F.3d at 443. It presumed, in other words, that denial of an application for leave to appeal was *not* a decision on the merits for AEDPA purposes, unless the Michigan courts said so. After *Harrington*, this logic is untenable.[8] *Harrington* thus abrogates *Dorn*. We hold that AEDPA deference applies to Michigan orders like the orders in this case, absent some "indication or [Michigan] procedural principle to the contrary." *Harrington*, 131 S. Ct. at 785.

The question remains, however, whether there is a principle of Michigan law or circumstance of this case that overcomes the *Harrington* presumption. There is not. First, at argument, Werth urged that *Harrington* does not apply because of differences between the Michigan procedure that Werth attempted to use here and the California procedure that Richter attempted to use in *Harrington*.[9] To this end, he cites Michigan precedent indicating that "[w]hen the [Michigan Supreme] Court denies leave to appeal, it does not comment on the merits of a case," *Beasley v. State*, 765 N.W.2d 608, 608

---

[8]A number of district-court judges have recognized as much. *See Reddrick v. Howes*, No. 2:09–CV–13133, 2011 WL 2580671, at *2 (E.D. Mich. June 29, 2011) (noting that *Dorn*'s "holding has been superceded [sic] by *Richter*"); *Parks v. Warren*, 773 F. Supp. 2d 715, 722 (E.D. Mich. 2011) (suggesting that "[t]he approach espoused by *Dorn* was called into doubt by *Harrington v. Richter*"); *Snyder v. Lafler*, No. 09–13773, 2011 WL 309056, at *3 (E.D. Mich. Jan. 27, 2011) (acknowledging *Dorn*, but applying *Harrington* framework to determine that AEDPA deference was appropriate, where denials of application for review were identical to denials at issue here). *But see Matthews v. Birkett*, No. 1:08–cv–1114, 2011 WL 2174504, at *7 (W.D. Mich. March 8, 2011) (applying *Dorn* without considering whether "one-sentence order" was merits decision in light of *Harrington*).

[9]Werth applied for leave to appeal; Harrington applied for a state writ of habeas corpus.

(Mich. 2009) (Kelly, C.J., concurring), and that "a denial of leave to appeal by the Supreme Court, without explanation, is generally not considered a decision on the merits and is not precedentially binding." *People v. Shook*, No. 233346, 2002 WL 31379664, at *2 (Mich. App. Ct. Oct. 22, 2002).

This is "*generally*," *ibid.* (emphasis added), true "but with the caveat that denials of leaves to appeal *based on lack of merit* may constitute rulings on the merits of a case." *Lawrence v. 48th Dist. Court*, 560 F.3d 475, 479 (6th Cir. 2009) (emphasis added) (citing *People v. Collier*, No. 253151, 2005 WL 1106501, at *1 (Mich. Ct. App. May 10, 2005) ("Although denial of an application for leave to appeal where the court expresses no opinion on the merits does not implicate the law of the case doctrine, this Court has consistently held that denial of an application 'for lack of merit in the grounds presented' is a decision on the merits of the issues raised."))) (collecting cases); *see also People v. Kline*, No. 212106, 2001 WL 879016, at *1 (Mich. Ct. App. Aug. 3, 2001). Here, as in *Lawrence*, the Michigan appellate courts specified that they denied Werth's application for reasons involving the substance of his claims. These decisions, then, were "on the merits" as a matter of Michigan law, and thus qualify for AEDPA deference.[10]

Nor does any Michigan statute or court rule compel a contrary conclusion. It is true that Michigan Court Rule 7.321 provides: "The reasons for denying leave to appeal . . . are not to be published, and are not to be regarded as precedent." But this does not resolve the issue that we face under *Harrington*. Published or unpublished, our focus is whether the decision was "on the merits." Likewise, Michigan Court Rule 7.215(E)(1), which explains that "[a]n order denying leave to appeal is not deemed to dispose of an appeal," does not automatically resolve the *Harrington* inquiry. Rule 7.215(e)(1) only governs how *other* Michigan courts treat the denial of an application for leave to appeal for precedential and jurisdictional purposes; it has no bearing on the issuing court's reasons for denying the application. *See People v. Lown*, No. 299564, 2012 WL 247775, at *2 (Mich. Ct. App. Jan. 26, 2012) (quoting *Johnson v. White*, 682

---

[10]This principle also disposes of Werth's claim that we may not defer to the denials of his petitions for review because they are no more than "a decision . . . not to decide at all." *Greene v. Fisher*, 132 S. Ct. 38, 45 (2011). Under Michigan law, this is simply not so.

N.W.2d 505, 513 (Mich. Ct. App. 2004)); *Kasben v. Hoffman*, 751 N.W.2d 520, 522 (Mich. Ct. App. 2008).

Finally, Werth offers no "reason to think some other explanation for the state court's decision is more likely," *Harrington*, 131 S. Ct. at 785, in this particular case, pointing only to the ambiguous language of the Michigan courts' orders, and Michigan cases and court rules. Indeed, Werth does not even offer the kind of purely speculative explanation that the Court rejected in *Harrington*, 131 S. Ct. at 785 ("[Richter] mentions the theoretical possibility that the members of the California Supreme Court may not have agreed on the reasons for denying his petition. It is pure speculation, however, to suppose that happened in this case.").

Thus, neither Michigan law nor the specific background of this case gives us "reason to think some other explanation for the state court's decision is more likely." *Harrington*, 131 S. Ct. at 785. The *Harrington* presumption that an unexplained state-court decision was on the merits controls, and we apply AEDPA deference to Werth's claim.

### III

Under AEDPA, we may not grant a writ of habeas corpus on a claim that a state court has resolved on the merits unless the decision:

> (1) . . . was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Under this standard, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Ibid.* Rather, before we may grant the writ, "a state prisoner must show that the state court's ruling on

the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786–87.  Where, as here, the state court did not elucidate the reasons for its decision, "the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id.* at 784.

As with all of its legal conclusions, we review the district court's application of this stringent standard *de novo*.  *Davis v. Lafler*, 658 F.3d 525, 530 (6th Cir. 2011) (en banc).  Review of district-court factual findings is for clear error.  *Ibid.*

IV

"Generally, a voluntary and unconditional guilty plea 'bars any subsequent non-jurisdictional attack on the conviction.'"  *United States v. Corp*, 668 F.3d 379, 384 (6th Cir. 2012) (internal quotations omitted).  This is so because

> a guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973).  Thus, after the entry of an unconditional guilty plea, the defendant may challenge only the court's jurisdiction and the voluntary and intelligent character of the plea itself.  *United States v. Ferguson*, 669 F.3d 756, 763 (6th Cir. 2012).

Whether this principle prevents a defendant allegedly denied his right to self-representation from making a *Faretta* challenge on appeal is a question that has divided the state and federal courts.  Some treat a *Faretta* challenge exactly like any other non-jurisdictional challenge, holding that a defendant waives his self-representation claim by entering a knowing and voluntary unconditional guilty plea.  *See United States v. Moussaoui*, 591 F.3d 263, 279–80 (4th Cir. 2010); *Gomez v. Berge*, 434 F.3d 940, 943 (7th Cir. 2006); *United States v. Seybold*, 979 F.2d 582, 585–86 (7th Cir. 1992);

*Rowland v. Thayer*, No. 4:09–CV–630–A, 2010 WL 4511023, at \*5 (N.D. Tex. Nov. 1, 2010); *State v. Kovach*, No. 08-MA-125, 2009 WL 1710752, at \*2 (Ohio App. 7th Dist. June 12, 2009); *Miller v. State*, No. 08-02-00405-CR, 2003 WL 21574275, at \*1 (Tex. App.-El Paso July 10, 2003); *State v. Szemple*, 753 A.2d 732, 736 (N.J. Super. Ct. App. Div. 2000); *People v. Shields*, 613 N.Y.S.2d 281, 282 (N.Y. Super. Ct. App. Div. 1994). At least one other federal circuit has held that, by allowing counsel to plea bargain, the defendant implicitly waives his *Faretta* rights. *United States v. Montgomery*, 529 F.2d 1404, 1406 (10th Cir. 1976) (holding that because "the defendant allowed [the] Public Defender . . . to conduct plea bargaining on his behalf. . . . he demonstrated that he was no longer asserting his right to represent himself").

Only one federal court has held that a defendant who pleads guilty unconditionally may still maintain his *Faretta* challenge on appeal. In *United States v. Hernandez*, 203 F.3d 614, 626–27 (9th Cir. 2000) (Reinhardt, J.), the Ninth Circuit held that a guilty plea by a defendant wrongfully deprived of his right to self-representation was automatically involuntary because the defendant was "forced . . . to choose between pleading guilty and submitting to a trial the very structure of which would be unconstitutional." *Id.* at 626; *see also United States v. Kaczynski*, 239 F.3d 1108, 1116 (9th Cir. 2001) (following *Hernandez* as binding circuit precedent). A number of California courts have reached the same result, *see, e.g.*, *People v. Marlow*, 96 P.3d 126, 135 (Cal. 2004); *People v. Butler*, No. B213049, 2010 WL 2000332, at \*8 n.7 (Cal. App. 2d Dist. May 20, 2010); *People v. Robinson*, 65 Cal. Rptr. 2d 406, 409–10 (Cal. App. 3d Dist. 1997) (holding that defendant who obtained certificate of probable cause could challenge denial of right to self-representation after guilty plea),[11] as did the Michigan

---

[11]These California cases are not precisely analogous to other cases considering whether a defendant waives his appellate *Faretta* challenge by pleading guilty. California allows a defendant who pleads guilty or *nolo contendere* to challenge his conviction based on "reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings." Cal. Penal Code § 1237.5. Before he can mount such an attack, though, the defendant must obtain a certificate of probable cause. Cal. Rules of Court, Rule 8.304. In this context, the California courts have held that *Faretta* error is a "reasonable constitutional . . . ground[] going to the legality of the proceedings," *ibid.*, amenable to challenge if the defendant obtains a certificate of probable cause. *See Marlow*, 96 P.3d at 135 ("Although not relying on the absence of a certificate of probable cause, respondent argues the claim of erroneous denial of a *Faretta* motion is not one going to the 'legality of the proceedings' and thus is not cognizable on appeal. We disagree." (citations omitted)).

Court of Appeals in an unpublished opinion. *People v. Hoffman*, No. 266560, 2007 WL 397224, at *2 (Mich. Ct. App. Feb. 6) (citing *Hernandez*, 203 F.3d at 626–27), *leave to appeal denied*, 737 N.W.2d 767 (Mich. 2007).  The Supreme Court has not spoken on the issue.  *See* Appellant's Reply Br. at 15 ("Neither this court nor the Supreme Court has addressed the specific question of whether the violation of a defendant's right to self-representation renders a guilty plea invalid.  This question has divided the courts that have confronted it.").

If nothing else, these cases show that fairminded jurists could (and do) debate whether a defendant waives his right to self-representation by entering a knowing and voluntary unconditional guilty plea.  Under AEDPA, this is enough.  *Harrington*, 131 S. Ct. at 786.  It did not violate clearly established Supreme Court precedent for the Michigan appellate courts to conclude that Werth's guilty plea foreclosed his *Faretta* challenge.

Werth's contrary arguments are unavailing.  First, he urges that *Tollett*'s waiver analysis does not apply because "the violation of Mr. Werth's rights was of an *ongoing* nature."  Appellant's Br. at 38.  This argument fails, first, because Werth points to no clearly established Supreme Court precedent that acknowledges such an exception to the *Tollett* rule.  But even if he did, his argument would fail as a matter of fact.  The state court denied Werth's self-representation motion two days before he pleaded guilty.  At the time of his plea, Werth did not renew his request to represent himself.  Thus, the alleged *violation*, the court's denying his self-representation request, had already occurred at the time of his plea.  True, its *effects* were, in some sense, ongoing when Werth pleaded guilty.  But this would be true in almost any case.  Take *Tollett*.  There, the constitutional violation alleged was the systematic exclusion of African-Americans from the grand jury that indicted defendant Henderson.  Henderson later pleaded guilty to the very crimes that the supposedly defective indictment charged.  The *effect* of the alleged violation was at the heart of the guilty plea at the time that Henderson pleaded guilty.  Nevertheless, the Supreme Court held that "a guilty plea represents a break in the chain of events which has preceded it in the criminal process."  *Tollett*, 411 U.S. at

267. Thus, to hold that the ongoing *effects* of a constitutional violation mend *Tollett*'s broken chain is to ignore the very facts that gave rise to the doctrine in the first instance. Werth's claim that the state court's supposed *Faretta* violation was ongoing at the time of his plea therefore misses the mark. If anything was ongoing, it was the *effect* of the alleged violation. And that, under *Tollett*, does not change the break-in-the-chain analysis.

Second, Werth argues that "[b]ecause the trial court's refusal to allow Mr. Werth to exercise his constitutional right to self-representation directly contributed to his decision to plead guilty, his plea was not offered voluntarily and intelligently, and therefore cannot satisfy the prerequisites for waiver under *Tollett*." Appellant's Br. at 39. This argument has some force—indeed, it carried the day in *Hernandez*, 203 F.3d at 626–27. It met with a frostier reception, however, in *Moussaoui*, where the Fourth Circuit wrote:

> With all due respect, we are not persuaded by the analysis in *Hernandez*. . . . The *Hernandez* court's conclusion that the defendant's guilty plea was involuntary was based on a faulty premise, namely, that his only alternative was to submit to an unconstitutional trial. This premise fails to account for the fact that if the defendant proceeded to trial and was convicted, he could seek an appellate remedy for the constitutional violations he alleged.

591 F.3d at 280. We need not resolve, or even weigh in on, this debate between our sister circuits. It is enough to say that fairminded jurists could disagree whether the denial of a motion for self-representation necessarily renders a guilty plea involuntary and therefore invalid. Werth's second argument cannot succeed, given the deference that we must apply under AEDPA. *Harrington*, 131 S. Ct. at 786.

Third, Werth suggests that, because the Michigan courts would allow him to "plead guilty without forfeiting his right to judicial review" of his self-representation claim, he may present the claim here. *Lefkowitz v. Newsome*, 420 U.S. 283, 293 (1975). The only Michigan case to address the question whether a defendant waives his *Faretta* claim by entering a knowing and voluntary unconditional guilty plea is *Hoffman*, 2007

WL 397224, at *2. That decision is an unpublished opinion, which is "not precedentially binding" under Michigan law. Mich. Court Rule 7.215(c)(1).

It is not clear whether such an opinion qualifies as "state law," within the meaning of *Lefkowitz*. As Werth points out, we may consider and follow an unpublished state-court decision on state law, absent a contrary published decision, for "it remains our overarching duty to ensure that we correctly apply [state] law." *Bennett v. MIS Corp.*, 607 F.3d 1076, 1096 (6th Cir. 2010). *Lefkowitz*, however, involved a statutory provision that gave the defendant an opportunity to plead guilty, but still contest an adverse ruling on a motion to suppress. *See Lefkowitz*, 420 U.S. at 285. The Court justified its result with reference not to state common law, but to the formal consequences of the plea under relevant New York statutes. *Id.* at 290 ("[A]lthough termed by the New York Criminal Procedure Law a 'guilty plea,' the same label given to the pleas entered by the defendants in the *Brady* trilogy of cases and *Tollett v. Henderson*, Newsome's plea had legal consequences quite different from the consequences of the pleas entered in traditional guilty-plea cases."); *New Jersey v. Portash*, 440 U.S. 450, 455 n.4 (1979) (noting that *Lefkowitz* "was another case where *provisions of state law* allowed federal review that may not otherwise have been available." (emphasis added)). The Supreme Court did not specify whether "state law" included common law and, if so, which state decisions it meant to include. *See Fields v. Attorney Gen. State of Md.*, 956 F.2d 1290, 1295–96 (4th Cir. 1992) ("The meaning of 'state law' in [*Lefokwitz*'s] holding, however, is arguably ambiguous. It clearly includes state statutory law, as was the case in *Lefkowitz*. At least two circuits have extended *Lefkowitz* beyond state statutory law to include state common law and procedural practice. Fields invites us to adopt this expansive view. We decline this invitation."). And while we have considered a binding holding of a state supreme court as "state law" for the purposes of *Lefkowitz* analysis, *Canary v. Bland*, 583 F.2d 887, 889–90 (6th Cir. 1978), we have never done the same with published—much less unpublished, non-precedential—intermediate-appellate opinions. Nor, in the end, could we use *Canary* to resolve this ambiguity in *Lefkowitz*. As the Supreme Court's recent decision in *Parker v. Matthews* teaches, it would be "plain and repetitive error for the

Sixth Circuit to rely on its own precedents," rather than clearly established Supreme Court precedent, in resolving Werth's habeas claim. 132 S. Ct. 2148, 2155–56 (2012). We must, therefore, acknowledge that fairminded jurists could conclude that *Lefkowitz* applies only to state statutory law. This precludes Werth from qualifying for the exception that *Lefkowitz* carves out.[12]

Finally, Werth attempts to distinguish the cases that the magistrate judge cited. But even if we agreed with him at every turn, at least *Moussaoui* remains directly opposed to the position that he would have us take, a position based almost entirely on *Hernandez*. *See* Appellant's Br. at 52–53 ("In *Moussaoui*, the Fourth Circuit directly confronted the *Hernandez* decision and concluded that it was based on a faulty premise because the defendant could have proceeded to trial and sought a remedy on appeal if convicted."). Werth concedes as much, but suggests that the *Moussaoui* rule would be "extraordinarily punitive when applied to the facts here." *Id.* at 53. Be that as it may, the direct conflict between the *Hernandez* and *Moussaoui* panels precludes habeas relief here, unless we conclude that three jurists on one of our sister circuits were not fairminded. We, of course, do not reach that conclusion.

V

In sum, under the standard that we are bound to apply, Werth's guilty plea is a waiver of his *Faretta* claim. We therefore AFFIRM the district court's denial of Werth's petition.

---

[12] Also, it is worth noting that *Lefkowitz affirmed* district-court and circuit-court decisions holding that New York courts, under New York law, could allow a defendant to appeal an adverse suppression decision, even after a knowing and voluntary guilty plea. Werth asks for something different. He argues that we should *reverse* the Michigan courts' decisions based on a different Michigan case. To adopt his argument would be to dictate how the Michigan courts should have applied Michigan law. This result would—at minimum—be odd, since the Supreme Court has "repeatedly held that federal habeas corpus relief does not lie for errors of state law." *Wilson v. Corcoran*, 131 S. Ct. 13, 16 (2010) (citations and internal quotation marks omitted).