NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a1184n.06

No. 11-1756

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
*Nov 19, 2012*
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| KENDALL DONALDSON, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | EASTERN DISTRICT OF MICHIGAN |
| RAYMOND BOOKER, | ) | |
| | ) | |
| Respondent-Appellee. | ) | |
| | ) | |

Before: GIBBONS and COOK, Circuit Judges; and ROSENTHAL, District Judge[*].

**JULIA SMITH GIBBONS, Circuit Judge.** This appeal arises out of the district court's denial of *habeas corpus* to a Michigan prisoner. The petitioner-appellant, Kendall Donaldson, was convicted by a jury in Wayne County Circuit Court of armed robbery, assault with a dangerous weapon (felonious assault), felon in possession of a firearm, and possession of a firearm during the commission of a felony in conjunction with two robberies. Donaldson filed a petition for *habeas corpus*, which was denied by the district court. The district court granted a limited certificate of appealability on the issue of trial and appellate counsel's failure to investigate and obtain physical evidence. Donaldson has presented only that issue on appeal. For the reasons that follow, we affirm the judgment of the district court.

---

[*]The Honorable Lee H. Rosenthal, United States District Judge for the Southern District of Texas, sitting by designation.

-1-

**I.**

This case rests heavily on the timing of two robberies and whether Donaldson's counsel provided ineffective assistance by insufficiently exploring this timing as a defense in state court. The Gold Coast Lounge and the Deluxe Coney Island restaurant ("Deluxe"), two dining establishments on the same short block of Seven Mile Road in Detroit, were robbed in the early morning hours of October 3, 2002. The Deluxe robbery occurred at approximately 12:30 a.m. A short time thereafter, Donaldson was arrested as a suspect.

At trial, contradictory evidence was presented about the timing of the Gold Coast robbery by witnesses who had given various estimates to investigators on prior occasions. Edward Szymanski, who was shot in the Gold Coast robbery, first reported to police that he thought the robbery occurred at approximately 1:45 a.m. At his preliminary examination, Szymanski testified that the robbery had happened between 2:00 a.m. and 3:00 a.m. At trial, Szymanski testified that the robbery occurred before 1:00 a.m.

John Pierce, a parking valet whose money was stolen in the Gold Coast robbery, first told police that the robbery took place at 2:30 a.m. At trial, he testified that the police were at the crime scene by 2:30 a.m. and that the robbery could have occurred as early as 1:30 a.m.

Officer Laron Simmons, the first officer to arrive at Gold Coast, testified that he was dispatched to the robbery at 1:30 a.m. and arrived at 1:50 or 1:55 a.m. He testified that he met with Szymanski and Pierce at about 2:00 a.m.

Officer Tarek Bazzi testified that Donaldson was arrested at 1:00 a.m. Officer Kory Karpinsky testified that he and Officer Bazzi arrested Donaldson at about 1:15 a.m., approximately

two miles from the scene of the Gold Coast robbery. Officer Kyle Bryant, who was not present at the time of the arrest, testified that he was in the car with Officer Bazzi and that the call to arrest Donaldson was received at 12:30 a.m., with the actual arrest occurring between 12:40 and 12:45 a.m. Officer Daniel Bryant testified that Donaldson had been arrested before Bryant arrived to take him to the precinct at 1:00 a.m.

Trial counsel filed a motion to quash the information in this case, on the basis that Donaldson was already in custody at the time of the Gold Coast robbery. That motion was denied after an evidentiary hearing. Trial counsel also argued Donaldson's timing theory in his opening statement, in his cross-examination of witnesses, and in his closing argument.

After a trial, the jury convicted Donaldson of (1) four counts of armed robbery, in violation of Mich. Comp. Laws § 750.529; (2) two counts of possession of a firearm during the commission of a felony, in violation of Mich. Comp. Laws § 750.227b; (3) two counts of felon in possession of a firearm, in violation of Mich. Comp. Laws § 750.224f; and (4) one count of felonious assault, in violation of Mich. Comp. Laws § 750.82.

The jury first reached a verdict as to the Deluxe robbery, finding Donaldson guilty. After additional deliberation, it asked the trial court to have the court reporter reread the testimony of Officers Simmons and Karpinsky. The jury then asked to have Officer Bazzi's testimony reread, to watch later portions of the surveillance video to see when the police arrived, and to have the testimony of Szymanski and Pierce reread, as well. Noting that the court reporter could not prepare the testimony of the two complaining witnesses while reading Officer Bazzi's testimony, the court allowed Officer Bazzi's testimony to be reread and sent the jury back to the deliberation room to

determine if the jurors "really need to hear more testimony." Four-and-a-half hours later, the jury

returned with a verdict, convicting Donaldson of the charges associated with the Gold Coast robbery.

Donaldson then appealed his convictions and sentences to the Michigan Court of Appeals.

Donaldson's counsel filed a brief arguing that the trial court erred in failing to suppress evidence of

pre-trial photographic line-ups and that the government presented insufficient evidence to support

his conviction. In a *pro se* supplemental brief, Donaldson addressed, among other claims, the

ineffective assistance of trial counsel claim that is now before this court. He argued that trial counsel

was deficient in failing to obtain the medical records of complaining witness Szymanski, given that

the timing of his medical treatment may have supported Donaldson's theory that the timing of the

Gold Coast robbery precluded him as a perpetrator.

> The Michigan Court of Appeals held as follows:
>
> The jury could have found from Simmons' testimony that he was dispatched to the Gold Coast Lounge robbery around 1:30 a.m., and that the robbery occurred fifteen to thirty minutes before the dispatch, or before 1:00 a.m., which would have been before Bazzi and Karpinsky arrested Donaldson. Also, in light of the forty-five-minute discrepancy between Pierce's and Szymanski's original estimates of the offense, their emotional trauma from being robbed or shot, and Szymanski's lack of a watch, the jury reasonably could have found that Pierce and Szymanski were mistaken when they gave their statements to the police.

*People v. Donaldson*, Nos. 248597, 248634, 249209, 2004 WL 2101736, at *5 (Mich. Ct. App. Sept.

21, 2004). The Court of Appeals did not address Donaldson's claim of ineffective assistance of

counsel, which he raised in his *pro se* supplemental brief.

Donaldson then filed a motion for relief from judgment with the trial court, reiterating his

claims of ineffective assistance and incorporating counsel's failure to acquire the 911-call transcript

associated with the Gold Coast robbery. The trial court denied the motion. In its opinion and order, the trial court held that "[t]he defendant's claim that the 911-call transcript could have exonerated him is speculative when viewed in the light of the strong evidence of guilt presented." The trial court relied upon the proximity of the two robberies in place and time, witness descriptions of the robbers and their clothing that matched the two co-defendants, and the fact that Donaldson and his co-defendant were arrested a short distance from the robberies. The trial court denied relief on Donaldson's ineffective assistance of counsel claims, holding that "[t]he defendant has not shown a miscarriage of justice or that an actually innocent person was convicted."

Donaldson filed an application for leave to appeal that judgment in the Michigan Court of Appeals and the Michigan Supreme Court, alleging that his trial counsel was ineffective for failing to request the transcript and that his appellate counsel was ineffective for failing to present his ineffective assistance claim on direct review. Both courts denied Donaldson's motions for leave to appeal.[1]

Donaldson filed his petition for *habeas corpus* pursuant to 28 U.S.C. § 2254 on March 17, 2008. The district court held an evidentiary hearing on November 15, 2010. On March 25, 2011, the district court entered an opinion and order denying Donaldson's petition for *habeas corpus* but granting a certificate of appealability on the issue of ineffective assistance of trial and appellate

---

[1]Although Donaldson construes the ineffective assistance claims presented in his direct appeal in state court and in his motion for relief from judgment as distinct from one another, we consider them together—as a single claim that counsel failed to adequately investigate his timing defense. Therefore, the relevant state court decisions under review by this court are those of the Michigan Court of Appeals and the Michigan Supreme Court addressing the denial of Donaldson's motion for relief from judgment.

counsel for their "failure to investigate and obtain physical evidence regarding the Gold Coast robbery." Donaldson filed a motion to alter or amend the court's opinion and judgment, which was denied on June 13, 2011. Donaldson then filed a timely notice of appeal.

On appeal in this court, Donaldson alleges that he suffered ineffective assistance of trial and appellate counsel because both failed to investigate the Emergency Medical Services ("EMS") "run sheet," which would show when the ambulance was dispatched to the scene, Szymanski's hospital record, and Donaldson's booking record. He argues that this evidence shows that it was impossible for Donaldson to have committed the Gold Coast robbery.

## II.

In *habeas corpus* proceedings, this court reviews a district court's legal conclusions *de novo* and its factual findings for clear error. *Montgomery v. Bobby*, 654 F.3d 668, 676 (6th Cir. 2011) (en banc).

Under AEDPA,

[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

As to legal conclusions, pursuant to the "contrary to" clause of § 2254(d)(1), "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). Under the "unreasonable application" clause of § 2254(d)(1), a federal court may grant the writ if the state court's application of clearly established federal law to the facts of the prisoner's case was objectively unreasonable in light of the evidence presented in the state court proceedings. *Id.* at 409–11. Importantly, "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 410. Finally, under the "unreasonable determination" clause of § 2254(d)(2), federal courts must bear in mind that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 130 S. Ct. 841, 849 (2010).

Section 2254(d), as amended by AEDPA, is a "purposefully demanding standard." *Montgomery*, 654 F.3d at 676 (citing *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)). To obtain relief, a *habeas* petitioner must "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786–87. This "'highly deferential standard'" requires that determinations made in state court "'be given the benefit of the doubt.'" *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)).

Under *Harrington v. Richter*, a state court's summary denials of claims are generally considered to be decided on the merits and enjoy AEDPA deference. *Richter*, 131 S. Ct. at 784–85. "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.*; *see also Werth v. Bell*, 692 F.3d 486, 494 (6th Cir. 2012) (holding that, in the absence of a reason to think some other explanation is more likely, a summary denial of review from Michigan's appellate courts is a decision on the merits and is entitled to AEDPA deference).

**A.**

Although the district court conducted an evidentiary hearing on Donaldson's petition, the Supreme Court subsequently ruled in *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011), that review under § 2254(d)(1) precludes consideration of evidence introduced in an evidentiary hearing before a federal *habeas* court. *Pinholster*, 131 S. Ct. at 1398 ("We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.").

Donaldson argues that the *Pinholster* limitation does not apply in cases like his, in which the petitioner requested an evidentiary hearing in state court and was thereby not at fault for failure to develop the factual record in state court. Donaldson is correct to point out that the dissent in *Pinholster* suggested an evidentiary hearing on federal *habeas* review would be appropriate if "a petitioner's inability to develop the facts supporting his claim was the fault of the state court itself." *Pinholster*, 131 S. Ct. at 1417 n.5 (Sotomayor, J., dissenting). However, the dissent also suggested

that this very limited exception would apply when a state court has not adjudicated a claim on the merits. *Id.* After *Harrington* and *Werth*, that limited exception is not available to Donaldson.

The Supreme Court's focus in *Pinholster* was on the principle that a federal *habeas* court must not analyze a state court's adjudication and decision, summary though it may have been, on the basis of facts not before the state court. *Pinholster*, 131 S. Ct. at 1399. Donaldson does not provide a compelling reason to depart from that principle in his case. Therefore, we may not consider the evidence adduced at the evidentiary hearing, including the Eleventh Precinct's booking records, medical records showing that Szymanski suffered a "graze wound" on his upper right abdomen, and an EMS run sheet showing that EMS was dispatched at 2:25 a.m.

**B.**

The Michigan Court of Appeals denied leave to appeal Donaldson's claim of ineffective assistance of trial counsel in a summary order that stated that "the delayed application for leave to appeal is DENIED for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." DE 16-30, Mich. Ct. App. Order of April 20, 2007. The Michigan Supreme Court also denied leave to appeal in an order that stated that "the application for leave to appeal the April 20, 2007 order of the Court of Appeals is considered, and it is DENIED, because the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Donaldson*, 740 N.W.2d 267 (Mich. 2007).

We recently considered summary orders from Michigan state courts in *Werth*, which analyzed the impact of the Supreme Court's recent decision in *Richter*. We held that "AEDPA deference applies to Michigan orders like the orders in this case, absent some 'indication or [Michigan]

procedural principle to the contrary.'" *Werth*, 692 F.3d at 493 (quoting *Richter*, 131 S. Ct. at 785).

Although the orders in that case were different from the orders considered here, the presumption of

*Richter* still applies. We have previously held that brief orders citing Michigan Court Rule 6.508(D)[2]

"can refer to the petitioner's failure to establish entitlement to relief either on the merits or

procedurally." *Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir. 2010) (en banc). In light of the

presumption of *Richter*, and in the absence of any argument by Donaldson that his appeals were

denied on the basis of a Michigan procedural principle, we apply AEDPA deference to the summary

denial by the Michigan Supreme Court. *See Richter*, 131 S. Ct. at 784–85.

We ask, therefore, in the case of this summary denial, "what arguments . . . could have

supported[] the state court's decision; and then . . . whether it is possible fairminded jurists could

---

[2]Rule 6.508(D) provides:

Entitlement to Relief. The defendant has the burden of establishing entitlement to the relief requested. The court may not grant relief to the defendant if the motion

(1) seeks relief from a judgment of conviction and sentence that still is subject to challenge on [direct] appeal . . . ;

(2) alleges grounds for relief which were decided against the defendant in a prior appeal or proceeding under this subchapter, unless the defendant establishes that a retroactive change in the law has undermined the prior decision;

(3) alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates
      (a) good cause . . . , and
      (b) actual prejudice . . . .

The court may waive the "good cause" requirement of subrule (D)(3)(a) if it concludes that there is a significant possibility that the defendant is innocent of the crime.

disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *See Richter*, 131 S. Ct. at 786.

## C.

For Donaldson to have been entitled to relief from the Michigan Supreme Court on his ineffective assistance of trial counsel claim, he would have had to demonstrate both that his counsel provided deficient performance and that he suffered resulting prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient performance occurs if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. A reviewing court applies a "strong presumption" that counsel's performance was reasonable, and a petitioner seeking to prove deficient performance must demonstrate that counsel's errors were so egregious that he "was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687, 689. In order to demonstrate prejudice, a petitioner must present "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A "conceivable effect on the outcome of the proceeding" is insufficient—rather, a petitioner must show errors "so serious as to deprive the defendant of a fair trial." *Id.* at 687, 693. When ineffective assistance claims are reviewed under AEDPA deference, and these two exacting standards apply simultaneously, review is "doubly" deferential, and the appropriate question for review is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 131 S. Ct. at 788 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).

**1.**

In this case, Donaldson cannot show that the Michigan Supreme Court had "no reasonable basis" for its determination that *Strickland*'s deferential standard could not be met. *See Richter*, 131 S. Ct. at 784. Donaldson cannot demonstrate deficient performance through counsel's failure to acquire the EMS run sheet and Szymanski's medical records because he misinterprets the duty owed to him by trial counsel. "'[C]ounsel has a duty to make reasonable investigations *or* to make a reasonable decision that makes particular investigations unnecessary.'" *Pinholster*, 131 S. Ct. at 1407 (quoting *Strickland*, 466 U.S. at 691). Further, there is a strong presumption that trial counsel acted "'for tactical reasons rather than through sheer neglect.'" *Id.* at 1404 (quoting *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) (per curiam)). Donaldson's trial counsel did not make an effort to obtain the EMS run sheet and Szymanski's hospital record, which Donaldson argues would have tended to show that it was impossible for Donaldson to have committed the Gold Coast robbery. However, as noted by the district court, the EMS run sheet and Szymanski's medical records would not have established that Donaldson was in custody at the time of the Gold Coast robbery. Rather, they would reflect only that Szymanski was shot and injured at some time before EMS was dispatched and he arrived at the hospital.

By contrast, the booking record, which indicated that Donaldson, under the alias of "Jeffrey Cope," was entered at 12:45 a.m., could support Donaldson's theory that he was in custody at the time of the Gold Coast robbery. This court has held that trial counsel's failure to seek corroboration for an alibi defense constituted deficient performance. *See, e.g.*, *Bigelow v. Haviland*, 576 F.3d 284, 289 (6th Cir. 2009) (affirming district court's grant of *habeas corpus*). Here, as in *Bigelow*,

Donaldson's role in the Gold Coast robbery turned in large part on his alibi defense. *See Bigelow*, 576 F.3d at 289. Given that witnesses disagreed about the timing of the Gold Coast robbery and Donaldson's alibi relied on his having been booked at the police precinct prior to the robbery, Donaldson's trial counsel compromised Donaldson's ability to present his alibi defense by failing to seek out booking records from the precinct. The fact that the records could have bolstered Donaldson's theory, however, is not sufficient to demonstrate that the Michigan Supreme Court had "no reasonable basis" for holding that this lapse did not constitute deficient performance. Trial counsel filed a motion to quash the information in this case, on the basis that Donaldson was already in custody at the time of the Gold Coast robbery. Trial counsel also argued Donaldson's timing theory in his opening statement, in his cross-examination of witnesses, and in his closing argument. The Michigan Supreme Court was not unreasonable in determining that Donaldson's timing theory was adequately presented without this additional evidence.

**2.**

As to prejudice, Donaldson argues that the information trial counsel did not seek tended to corroborate Szymanski and Pierce's initial statements and show that the Gold Coast robbery took place more than an hour after the Deluxe robbery. If that were true, Donaldson could not have participated in the Gold Coast robbery, as he had already been arrested. Donaldson points to the jury's questions and requests to rehear extensive testimony as support for his claim that this additional evidence could have changed the outcome in his case.

Donaldson may have had a colorable claim under *de novo* review that counsel's omission was "sufficient to undermine confidence in the outcome" in light of the conflicting testimony among

witnesses, the fact that several witnesses reported different times to the police and to the court, and the jury's requests to review testimony. Although this documentary evidence establishing some portion of the timeline could give a federal court reason to doubt the jury's verdict, AEDPA deference requires that we consider the reasonableness of the state court's resolution of the matter. The Michigan Court of Appeals noted that on the evidence before it, the jury could have found that the robbery occurred just before 1:00 a.m. and that Donaldson had not yet been arrested. It could have found that Pierce and Szymanski's initial statements to police were mistaken. Furthermore, both victims of the Gold Coast robbery identified Donaldson in photographic lineups hours after the robbery. Therefore, when applying AEDPA deference, we cannot say that the Michigan Supreme Court had "no reasonable basis" for concluding that counsel's performance did not prejudice Donaldson.

**D.**

The district court's order appeared to grant a certificate of appealability on the issue of whether Donaldson's appellate counsel provided ineffective assistance for failing to investigate the same evidence Donaldson suggests his trial counsel should have investigated. However, because appellate counsel would have been limited to the record on appeal, her only recourse would have been to raise the issue as a claim of ineffective assistance before the Michigan Court of Appeals. Donaldson presented this claim in his *pro se* supplemental brief and the Michigan Court of Appeals would have been aware of the issues he wished to raise. Therefore, Donaldson cannot establish that he was prejudiced by the omission or that the Michigan Supreme Court had no reasonable basis for denying relief on that claim.

**III.**

Based on the foregoing reasons, we affirm the judgment of the district court.