[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 18-13890

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

ELBERT LEE WILLIAMS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 5:16-cr-00064-MTT-CHW-1

_____

Before JORDAN, JILL PRYOR, and TJOFLAT, Circuit Judges.

TJOFLAT, Circuit Judge:

Elbert Lee Williams appeals his conviction by guilty plea for intent to distribute cocaine and cocaine base under 21 U.S.C § 841(a)(1). Williams alleges that the District Court improperly denied his right to self-representation under *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525 (1975). However, despite (1) the existence of a circuit split on whether a voluntary guilty plea waives the right to self-representation on appeal and (2) our own order to Williams's appellate counsel instructing her to brief whether this Court can review a denial of the right to self-representation following a guilty plea, Williams's appellate counsel failed to make any argument in the opening brief that even approached the applicable legal question. Accordingly, Williams has forfeited any argument under which we may grant relief in this appeal, and so we must affirm the District Court.

## I.

### A.

Williams is a 54-year-old man who withdrew from high school prior to completing the tenth grade; although capable of reading and writing, he has no other formal education. From 1988 to 1990, Williams committed a variety of offenses such as theft, burglary, and breaking into a car. He pled guilty with the assistance of counsel to each of these charges and received probation and ninety days confinement. Over the course of 1991, Wil-

liams was charged with and, with the assistance of counsel, subsequently pled guilty to burglary, three counts of cocaine distribution, and first-degree arson. For these crimes, he received a concurrent sentence of twenty years. Williams remained in custody from 1991 until December 2004, when he was paroled; however, he subsequently had his parole revoked in August 2005 after being found in possession of cocaine. Williams was paroled again in 2007, only to shortly thereafter be found driving under the influence of alcohol and in possession of cocaine. He pled guilty to these new offenses with the assistance of counsel and received a thirty-year sentence, of which he was to serve seven years in prison and the balance on probation. Williams was released on probation on April 27, 2015.

On April 13, 2016, in the instant case, police officers applied for and were granted a search warrant for the house where Williams was then located. During the subsequent search, Williams was found in a bedroom of that house in possession of 34.6 grams of powder cocaine, 11 grams of crack cocaine, .80 grams of marijuana, $1,740 cash, and a handgun. On November 9, 2016, Williams was charged with four counts: (1) possession with intent to distribute cocaine and cocaine base, (2) possession of marijuana, (3) felon in possession of a firearm, and (4) possessing a firearm in furtherance of a drug-trafficking crime. He was arrested, appointed counsel, then released on bail.

Despite having been appointed counsel, Williams began making numerous *pro se* motions. To the extent William's *pro se*

motions were intelligible, they put forth legal arguments common to the sovereign citizen movement. The FBI has provided the following description of sovereign citizen ideology:

> Sovereign citizens believe the USG [United States Government] is illegitimate and has drifted away from the true intent of the Constitution. As a result, the USG is not perceived to be acting in the interest of the American people. These groups generally do not adhere to federal, state, or local laws. Some sovereign citizens believe federal and state officials have no real authority and will only recognize the local sheriff's department as the only legitimate government official. Other law enforcement officials are viewed as being oppressive and illegitimate.
>
> Individuals who adhere to this ideology believe their status as a sovereign citizen exempts them from US laws and the US tax system . . . Sovereign citizens view the USG as bankrupt and without tangible assets; therefore, the USG is believed to use citizens to back US currency. Sovereign citizens believe the USG operates solely on a credit system using American citizens as collateral.

Federal Bureau of Investigation, "Sovereign Citizens: An Introduction for Law Enforcement" 3 (Nov. 2010), https://info.publicintelligence.net/FBI-SovereignCitizens.pdf. Sovereign citizens often target incarcerated individuals for recruitment and training. *Id.* at 13. As happened here, sovereign citizens have been known to challenge the jurisdiction of district

courts to try criminal cases by asserting that the federal government has no authority over a sovereign citizen. *See United States v. Benabe*, 654 F.3d 753, 766–67 (7th Cir. 2011) (noting that courts have "repeatedly rejected" sovereign citizens' "theories of individual sovereignty, immunity from prosecution, and their ilk").

Williams informed District Judge Marc T. Treadwell that he had "fired" his attorney, Catherine Williams (no relation), on April 10, 2017, at a pretrial hearing. Consequently, Judge Treadwell set a *Faretta* hearing for April 12 to determine whether Williams could knowingly and intelligently decide to represent himself. Between April 10 and April 12, Judge Treadwell denied several of Williams's *pro se* motions and Williams filed several more.

The *Faretta* hearing began with a brief discussion about the motions filed and denied in the intervening days and segued into Judge Treadwell informing Williams of the purpose of a *Faretta* hearing. Judge Treadwell then stated that:

> The problem is I cannot allow you to represent yourself unless you understand that you have to abide by the rules and law of this Court. And everything that you have done so far illustrates to me that you do not understand that.
>
> Now I'm going to ask you some questions to see if it's appropriate for you to represent yourself. It seems to me very unlikely that it is appropriate given thus far your apparent inability to understand that if you do represent yourself you've got to abide

by the rules of the Court and the laws of Congress and the Constitution.

Judge Treadwell then reminded Williams of the charges against him and inquired about the source of Williams's sovereign citizen theories. Williams replied that he had picked up his theories while studying with other inmates during his time incarcerated. Williams continued by comparing his legal situation to drowning, stating that "[a] drowning man will reach for a straw just to survive." Judge Treadwell replied that he understood that Williams felt desperate, stating:

> And everything that you're telling me so far is you are – you may think you are helping yourself, but you are absolutely intent on ruining any chance you have of defending yourself against these charges by urging bogus, unsubstantiated, illogical[] arguments.
>
> And that's the reason that it's going to be extremely difficult for me to find that you are knowingly, intelligently waiving your right to counsel because you may think you are reaching for something as a drowning man when you do that, but all you're reaching for is a lead weight that's going to take you to the bottom if you continue on the path that you are on right now.

Williams then inquired about the district court's subject matter jurisdiction and questioned how the "United States of America" could prosecute him as the United States is not a person. Judge Treadwell briefly explained, then stated:

Well, I think we're pretty quickly coming to the conclusion that I have to reach which is, Mr. Williams clearly does not understand the risk of him representing himself.

I cannot find that he knowingly and intelligently has made a decision to represent himself. Clearly his decision is based upon what somebody has told him, as he has described it about what the law is or should be, and it is completely separated from reality.

Now, how can a man, who is operating under that illusion – illusion in the sense that he cannot accept what the law is and rather urges completely unsubstantiated versions of the law, I guess you would call it, in his defense. It's a sure fire guarantee of a conviction, as best I can tell.

Judge Treadwell then questioned Williams about whether he understood that he would have to abide by the Federal Rules of Evidence and the Federal Rules of Criminal Procedure and reiterated that William's theories had no basis in law or fact.  Williams replied with a long statement explaining his prior legal troubles, the difficulty he has had with law enforcement and lawyers, and his skepticism towards the criminal judicial system.   Williams summed up his position by stating "[s]o if I'm going to take my life and just give it away why shouldn't I do it myself?"

Following Williams's statement, Judge Treadwell segued into asking Williams about his mental health.  Williams explained

that he had been diagnosed with depression and medicated while incarcerated, but that while outside prison he relied only on "[g]oing to church and dealing with the Lord" for treatment.

Judge Treadwell then asked how Williams saw his trial "unfolding" in this case, and Williams replied that he intended to make the same sovereign citizen arguments ("constitutional restraint and fraud subject matter jurisdiction") at trial. Judge Treadwell explained that the jury would decide only questions of fact and that since Williams's arguments were questions of law, Williams would be unable to discuss his arguments at trial once they were denied, although he could appeal that decision after trial. Williams replied, "Well, I'm going to have to go back and do some more digging and googling or whatever and praying and deal with the situation when that time comes, sir."

Judge Treadwell then inquired into Williams's education level and familiarity with trial procedure. Williams informed Judge Treadwell that he had completed the ninth grade and that his prior convictions resulted from guilty pleas rendered with the assistance of counsel.[1] Following this inquiry, there was a discussion about the possible sentences Williams faced should he be convicted.

---

[1] Williams mentioned here that his 2007 conviction resulted from a "bench trial." Williams's presentence investigation report notes that Williams plead guilty to the 2007 charges with the assistance of counsel, so it is unclear what Williams was referring to.

Williams then expressed his lack of faith in his lawyer, Ms. Williams, which Judge Treadwell found to be incredible based on prior "complimentary" statements Williams had made towards Ms. Williams and Judge Treadwell's own interactions with her. Judge Treadwell concluded the *Faretta* inquiry with the following statement:

> But what I'm looking at, Mr. Williams, is you're facing serious charges that have serious consequences and you say you want to defend those charges, defend yourself against those charges, by advancing arguments that have no basis in law or fact and will almost certainly result in your conviction at the hands of a jury. And under those circumstances I cannot find that it is appropriate for you to represent yourself.
>
> So, Ms. Williams will continue to represent you and we will keep the case on the trial calendar for May 8th.

Judge Treadwell, Ms. Williams, and the prosecutor then turned to discussing a plea offer the prosecution had made to Williams. Following a short exchange with Williams about his depression, the court then took a ten-minute break. When the hearing resumed, Judge Treadwell further inquired into Williams's mental health and concluded that a competency evaluation was necessary. Relevantly, Judge Treadwell stated that

> Th[e] evaluation could also inform the further consideration of Mr. Williams' request to represent

> himself if, in fact, he maintains that request after his evaluation.
>
> Clearly, though, the events here this morning and this afternoon now, raise considerable doubt as to whether or not Mr. Williams can knowingly and intelligently make the decision to represent himself.

The hearing then concluded. No written order was ever entered denying Williams's request to represent himself.

Following the hearing, Williams made several more *pro se* motions. On May 3, 2017, in an order denying one of Williams's motions to dismiss, the District Court informed Williams that *pro se* filings from represented parties would no longer be accepted by the clerk of the court in accordance with a recently instituted local rule "unless [the motions] concern the removal of his counsel." Consequently, the *pro se* motions Williams subsequently attempted to file on May 10, May 15, and May 31, 2017, were received by the clerk of the court but not filed.

Williams fell ill before his competency evaluation could be conducted and his trial was continued for roughly a year. Williams's competency evaluation was completed on April 2, 2018. On May 1, 2018, Judge Treadwell held a pretrial conference with the parties to discuss the results of the competency evaluation, which suggested that Williams was competent to stand trial; Judge Treadwell consequently found that Williams was competent. On May 9, 2018, Williams pled guilty to the first charge, possession with intent to distribute, in exchange for the Govern-

18-13890              Opinion of the Court                    11

ment dropping the other charges.  Williams was subsequently sentenced to 151 months of imprisonment and three years of supervised release.  The plea agreement made no mention of Williams waiving his constitutional right to self-representation.  The plea hearing also did not discuss the right to self-representation.  The plea agreement did state that Williams waived his right to appeal or collaterally attack his conviction and sentence, except that he had the right to bring an ineffective assistance of counsel claim and to appeal an above-guidelines sentence.  Williams timely appealed his conviction.

### B.

Erin Pinder was appointed to represent Williams on appeal on September 13, 2018.  On February 14, 2019, Pinder moved to withdraw as counsel pursuant to *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396 (1967).[2]  In support of her motion, Pinder filed

---

[2] In *Anders*, the Supreme Court held that if appellate counsel "finds [her] case to be wholly frivolous, after a conscientious examination of it, [s]he should so advise the court and request permission to withdraw." 386 U.S. at 744, 87 S. Ct. at 1400.  However, the Court required appellate counsel to accompany that request with a "brief referring to anything in the record that might arguably support the appeal," including citation to legal authorities.  *Id.* at 744–45, 87 S. Ct. at 1400.  This "*Anders* brief" is intended to aid the court in independently determining whether an appellant has any claims with arguable merit, so that "penniless defendants" are assured "the same rights and opportunities on appeal—as nearly as is practicable—as are enjoyed by those persons who are in a similar situation but who are able to afford the retention of private counsel." *Id.* at 745, 87 S. Ct. at 1400.

an *Anders* brief representing to this Court that she had found no colorable issues on appeal after conducting a "careful review of the complete court record" and "after researching the law as it relates to the facts of this case." This *Anders* brief did not address the possibility that a *Faretta* violation occurred, likely because Pinder had not requested that the *Faretta* hearing be transcribed for appeal.

On June 12, 2019, this Court denied without prejudice Pinder's motion to withdraw as counsel and directed her to order the transcript of the *Faretta* hearing for appeal. After these transcripts were filed on appeal, Pinder made a second motion to withdraw as counsel and accordingly filed a second *Anders* brief on August 26, 2019. In her second *Anders* brief, Pinder again represented that she had "conscientiously examin[ed] the entire record on appeal and the applicable statutes, rules, and case law." Pinder then went on to analyze and dismiss several grounds for appeal with possible merit. Pinder's analysis included a two-page discussion on the District Court's *Faretta* hearing. In this discussion, Pinder explained the purpose of *Faretta* hearings, summarized the *Faretta* hearing transcript, and concluded that "the district court properly conducted an inquiry into Mr. Williams' ability to represent himself at trial."

On January 28, 2020, this Court again denied Pinder's motion to withdraw as counsel. In our order, we identified the following two issues as having arguable merit:

Whether, despite later pleading guilty, this Court has discretion to review the denial of a defendant's request to proceed *pro se* which is a potential structural error and, if so, whether the district court erred in denying Williams's request to proceed *pro se* because it believed that he did not understand the risks of proceeding *pro se* due to his illogical legal theories.

Accordingly, we directed Pinder to file a merits brief addressing these issues "or any other issue counsel believes has merit."

Pinder filed Williams's opening brief on March 19, 2020. This brief only addressed the two issues we had identified, spending one page on whether this Court has the discretion to review Williams's *Faretta* request despite the guilty plea and seven pages analyzing the District Court's denial of Williams's request to proceed *pro se* per *Faretta*.  Here is Pinder's entire argument as to the first issue:

> **I. Despite later pleading guilty, this Court has the discretion to review the denial of a defendant's request to proceed *pro* se.**
>
> "The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense. It is the accused, not counsel, who must be 'informed of the nature and cause of the accusation,' who must be 'confronted with the witnesses against him,' and who must be accorded 'compulsory process for obtaining witnesses in his favor.' "

Although not stated in the Amendment in so many words, the right to self-representation—to make one's own defense personally—is, thus, necessarily implied by the structure of the Amendment. The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails." *Faretta v. California*, 422 U.S. 806, 819–20[] [(]1975). Because this is a fundamental right, a violation of right to counsel or of right to self-representation is not subject to harmless error analysis. *United States v. Fant*, 890 F.2d 408 (11th Cir. 1989). *See also McKaskle v. Wiggins,* 465 U.S. 168 (1984) (denial of self-representation at trial is structural); *United States v. Jimenez-Antunez*, 820 F.3d 1267, 1271 (11th Cir. 2016) (The denial of the right to counsel of choice is structural error).

Since the improper denial of a defendant's right to self-representation at trial is a structural error, this Court has the authority to review the district court's denial.

Pinder's argument thus consists of three sentences: a block quote from *Faretta* describing the right to self-representation, a sentence with citation correctly identifying an improper denial of the *Faretta* right to self-representation as structural error, and a conclusion without citation that this Court may review the improper denial of the right to self-representation because it is structural error. Importantly, Pinder only notes the chief obstacle to our review of the *Faretta* hearing—Williams's guilty plea—in her heading, which is taken almost *verbatim* from our order.

18-13890                Opinion of the Court                15

In response, the Government's brief laid out the circuit split on this issue, explaining the Ninth Circuit's holding in *United States v. Hernandez*, 203 F.3d 614, 626 (9th Cir. 2000), *overruled on other grounds by Indiana v. Edwards*, 554 U.S. 164, 128 S. Ct. 2379 (2008), that an improper denial of a defendant's request for self-representation renders any subsequent guilty plea *per se* involuntary and so voids any guilty plea. The Government then asked this Court to adopt the approach taken by the Fourth, Seventh, Eighth, and Tenth Circuits[3] and hold that an improper denial of the right to self-representation does not render a subsequent guilty plea involuntary, so the subsequent guilty plea waives the right to appeal the improper denial. *United States v. Dewberry*, 936 F.3d 803, 805–07 (8th Cir. 2019); *United States v. Moussaoui*, 591 F.3d 263, 279–80 (4th Cir. 2010); *Gomez v. Barge*, 434 F.3d 940, 943 (7th Cir. 2006); *United States v. Montgomery*, 529 F.2d 1404, 1407 (10th Cir. 1976). In her three-page reply brief, Pinder simply asked this Court to adopt the Ninth Circuit's holding in *Hernandez*, despite neither citing *Hernandez* nor ever addressing the voluntariness of Williams's guilty plea in her opening brief.

---

[3] The Government contends that the Sixth Circuit has also adopted the majority position, citing the Eight Circuit's decision in *United States v. Dewberry*, 936 F.3d 803, 806 (8th Cir. 2019) (citing *Werth v. Bell*, 692 F.3d 486, 497 (6th Cir. 2012)). While *Dewberry* does note that the Sixth Circuit has adopted the majority position, *id.*, the Sixth Circuit case it relied on for this proposition explicitly stated that it "need not resolve, or even weigh in on, this debate between our sister circuits." *Werth*, 692 F.3d at 497.

## II.

As Williams (through Pinder) correctly explained, the improper denial of the right to self-representation under *Faretta* is structural error, and so requires reversal on direct appeal when the error is both preserved and not waived. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 148–49, 126 S. Ct. 2557, 2563–64 (2006) (explaining structural error and listing the right to self-representation as an example). What Williams (through Pinder) fails to address is the Supreme Court precedent holding that a voluntary, subsequent guilty plea generally operates as a waiver of claims of constitutional error that occurred prior to the plea. *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S. Ct. 1602, 1608 (1973); *Stano v. Dugger*, 921 F.2d 1125, 1150 (11th Cir. 1991) (en banc) ("The Supreme Court has given finality to guilty pleas by precluding claims of constitutional deprivations occurring prior to entry of the plea."). As the Supreme Court explained in *Tollett*:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*.

411 U.S. at 267, 93 S. Ct. at 1608 (citing *McMann v. Richardson*, 397 U.S. 759, 770–71, 90 S. Ct. 1441, 1448–49 (1970)).

When a defendant enters an unconditional guilty plea, he may raise on appeal only a narrow class of challenges to his conviction. He may challenge his conviction by asserting that his plea was involuntary. *United States v. Saac*, 632 F.3d 1203, 1208 (11th Cir. 2011). He also may challenge the constitutionality of the statute of conviction. *Class v. United States*, 138 S. Ct. 798, 803 (2018). When a defendant raises the latter type of defect, he is in effect arguing that the "very initiation of the proceedings . . . operated to deprive him of due process of law." *Id.* (internal quotation marks omitted). Because he is arguing that the government lacked the power to punish him, the defendant may raise this type of challenge even after entering a guilty plea. *Id.*

In contrast, a defendant's voluntary guilty plea may waive a claim even of structural error. In fact, defendants do so whenever they plead guilty and, consequently, relinquish their right to a jury trial. *See Sullivan v. Louisiana*, 508 U.S. 275, 281–82, 113 S. Ct. 2078, 2083 (1993) (holding that a constitutionally deficient reasonable doubt instruction constitutes structural error as the deprivation of the right to trial by jury has "necessarily unquantifiable and indeterminate" consequences and "unquestionably qualifies as 'structural error'").

In *Class*, the Supreme Court contrasted a defendant's constitutional challenge to his statute of conviction, which is not waived by a guilty plea, with a claim raising a "case-related consti-

tutional defect," which may be waived by a guilty plea. *Class*, 138 S. Ct. at 804–05. The Court's example of a constitutional claim that may be waived by a guilty plea was a defendant's claim that his indictment was issued by a grand jury whose selection unlawfully excluded jurors of the defendant's race. *Id.* at 805. The Court explained that such a challenge was waived by the defendant's guilty plea because the government could cure the error by obtaining a "new indictment by a properly selected grand jury." *Id.* (internal quotation marks omitted). Because the Court previously recognized that such an error is structural, *see Johnson v. United States*, 520 U.S. 461, 469, 117 S. Ct. 1544, 1550 (1997) (identifying the unlawful exclusion of grand jurors of the defendant's race as a "structural error"), *Class* tells us that a defendant may waive a claim of structural error by entering a defendant's voluntary guilty plea. 138 S. Ct. at 805.

Turning to this case, in his opening brief, even when read liberally, Williams (through Pinder) does not raise a voluntariness challenge to his conviction or argue that the government lacked the power to criminalize his conduct. *See Regions Bank v. Legal Outsource PA*, 936 F.3d 1184, 1197 (11th Cir. 2019) (explaining that "briefs should be read liberally to ascertain the issues raised on appeal"). Accordingly, Williams forfeits these issues on ap-

18-13890                Opinion of the Court                 19

peal.[4]   *United States v. Campbell*, 26 F.4th 860, 873 (11th Cir. 2022) (en banc).[5]

    As we are barred by Williams's forfeiture from addressing the circuit split on the question of whether an improper denial of a defendant's *Faretta* right to self-representation automatically renders a guilty plea involuntary, we make no comment on the decisions of our sister circuits.  Likewise, we do not address the merits of Williams's *Faretta* claim.[6]  As we hold that Williams did not challenge his guilty plea on voluntariness grounds in this direct appeal, Williams can raise his *Faretta* and involuntariness claims in a motion to vacate under 28 U.S.C. § 2255, along with

---

[4] Since issues must be raised in a party's opening brief to be timely, Williams raising a voluntariness challenge under *Hernandez* in his reply brief does not excuse his forfeiture.  *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680–81 (11th Cir. 2014).

[5] In certain circumstances, we have discretion to revive a forfeited issue.  *See Campbell*, 26 F.4th at 873.  Even assuming that we have the discretion to revive the forfeited issue here, we cannot say that it would be appropriate to exercise our discretion and so decline to raise the voluntariness issue *sua sponte*.

[6] We do note that the Third Circuit recently reversed the conviction of a sovereign citizen who, like Williams, made multiple frivolous *pro se* motions, asked to represent himself, and then was denied his right to self-representation due to the frivolousness of his arguments.  *United States v. Taylor*, 21 F.4th 94, 100–05 (3d Cir. 2021); *see also United States v. Johnson*, 980 F.3d 570, 574, 577–78 (7th Cir. 2020) (affirming a district court finding that a sovereign citizen properly exercised his right to self-representation); *United States v. Mesquiti*, 854 F.3d 267, 272–75 (5th Cir. 2017) (same).

any other claims he may have. *See Montemoino v. United States*, 68 F.3d 416, 418 (11th Cir. 1995) ("plea validity" issues "can be raised in a § 2255 proceeding"); *Dewberry*, 936 F.3d at 808 (Kelly, J., concurring in the judgment) (explaining that whether a guilty plea was rendered involuntary due to a violation of *Faretta* "is often better deferred to post-conviction proceedings under 28 U.S.C. § 2255, as it usually involves facts outside the original record"); *cf. Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014) (holding that a prisoner was "procedurally barred from raising arguments in a motion to vacate his sentence, 28 U.S.C. § 2255, that he already raised and that [the court] rejected in his direct appeal").

## III.

For the foregoing reasons, we affirm the District Court.

**AFFIRMED.**