**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————

No. 23-13809

Non-Argument Calendar

————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

LORI ANN NADEMUS,
   a.k.a. Lori Gerhardt,

*Defendant-Appellant.*

————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:20-cr-00257-JSM-UAM-1

————————————

Before ROSENBAUM, NEWSOM, and BRASHER, Circuit Judges.

PER CURIAM:

After pleading guilty, Lori Nademus appeals her convictions and total sentence of 110 months of imprisonment for engaging in

a scheme to defraud. She argues that the district court abused its discretion by failing to hold a competency hearing *sua sponte*, erred in failing to dismiss the indictment, and violated her due-process rights by refusing to give her expert forensic accountant adequate time to prepare for sentencing. After careful review, we affirm.

## I.

In March 2021, Nademus was charged in a superseding indictment with seven counts of wire fraud, *see* 18 U.S.C. § 1343, and eleven counts of illegal monetary transactions, *see* 18 U.S.C. § 1957. The superseding indictment alleged a scheme to defraud in which Nademus solicited individuals to invest in a false and fraudulent high-yield investment program and instead used the proceeds for her own benefit and to perpetuate the scheme. Nademus moved to dismiss the indictment, arguing that the fraud counts were based in part on contracts that were illegal under state law, so they could not serve as the basis for criminal charges. The district court denied the motion.

### A.

In March 2023, shortly before trial, Nademus pled guilty to two counts under a written plea agreement. In the plea agreement, Nademus "expressly waive[d] the right to appeal [her] sentence on any ground," except on limited grounds. She also admitted to a detailed factual basis.

According to the factual basis, from February 2017 to September 2020, Nademus "solicited individuals to invest in false and

fraudulent high yield investment programs and used the fraud proceeds to perpetuate the scheme for her own personal enrichment." In soliciting funds, Nademus made false and fraudulent representations "that the funds would be used for various projects, . . . and that investors would realize nearly immediate, significant, and ongoing gains by providing bridge financing." Nademus "then memorialized the false and fraudulent investment opportunities presented to victims by so-called promissory notes, balloon promissory notes, and/or memos of understanding." Once the investors wired the funds, Nademus diverted a large portion for her own personal benefit. And when Nademus failed to pay the supposed gains in a timely manner, she sought to "assuage victim-investors' concerns by promising a higher return at a later time to lull them into a false sense of security." These more general allegations were supported by several pages of specific details about the underlying transactions.

A magistrate judge conducted Nademus's change-of-plea hearing with her consent. The judge first confirmed that Nademus was competent to proceed. Nademus reported that she was not suffering from, and had not received treatment for, any mental or emotional disease or illness, that she understood the plea agreement, and that there was nothing to prevent her from understanding the proceedings. Nademus also said that no one had forced or threatened her to plead guilty.

During the colloquy, Nademus confirmed her understanding of the charges and penalties she faced and the rights she was

waiving by pleading guilty.  The magistrate judge addressed important provisions in the plea agreement, and Nademus confirmed she had read, understood, and agreed to the entire agreement, including the appeal waiver, which the judge recited in open court. Nademus also expressly admitted the truth of the factual basis in the plea agreement, along with the elements of her offenses.  The magistrate judge found that Nademus was pleading guilty knowingly and voluntarily and with the close assistance of counsel.  So the magistrate judge recommended that her plea be accepted.  The district court accepted the plea without objection.

*B.*

Nearly seven months later, on October 12, 2023, Nademus moved to withdraw her guilty plea and to continue her upcoming sentencing, scheduled for October 31, 2023.  The government responded in opposition.  The district court held a hearing on the morning of October 30, 2023.

An attorney for Nademus began the hearing by stating that she wished to withdraw the underlying motion.  The district court swore Nademus in and asked if she wished to withdraw her motion to withdraw the guilty plea.  Nademus responded that she was "having a hard time being cognizant," explaining that she had been in the medical unit for nearly two weeks because she was having issues with her head and her heart.  The court asked, "Do you in fact wish to withdraw your motion?"  Nademus stated, "Yes, sir," and confirmed that she had discussed the matter with her attorney,

was satisfied with his advice, and was withdrawing the motion of her own free will.

After the government expressed concern about Nademus's "cognizant" remark and her "delayed response" to a question about threats, the district court continued its colloquy with Nademus. The court asked about medications, and Nademus said she took medication for blackouts and dizziness, which normally helped her, but she did not take it that morning. Asked if she understood what was happening that morning, she said "not 100 percent, no." She said that she was "confused why I'm here" because she thought the hearing would "either be moved or canceled" due to her health, and because she had asked her attorney to withdraw the motion to withdraw the plea the night before. But she expressly confirmed "that I'm trying to withdraw the motion to withdraw the plea," even if she couldn't "follow everyone's conversation at 100 percent."

The district court informed Nademus that, since she was present, the hearing on the motion to withdraw the plea could still go forward if she wished. Nademus said she "would rather it not" and didn't "fully understand what's happening." At the court's suggestion, Nademus took a break to consult with her attorneys.

When the hearing resumed, the government conveyed that it did not oppose withdrawal of the motion to withdraw the guilty plea, but that the court should still make an "independent finding" on the underlying motion, citing concerns about whether Na-

demus was "cognizant today." The court did not conduct this analysis, reasoning that the motion to withdraw the guilty plea would not be before the court if she voluntarily withdrew it. Nademus again consulted with her attorneys off the record, and then confirmed to the court that she wished to withdraw her motion to withdraw the guilty plea. Accordingly, the district court found that Nademus's decision to withdraw her motion to withdraw the guilty plea was "knowing and voluntary and done with the close assistance of counsel."

### C.

At the October 30 hearing, Nademus also moved to continue sentencing for 30 days. Defense counsel explained that Nademus intended to offer the testimony of a forensic accountant who had worked on the case for several months, but the expert had been unable to speak with her and gain her perspective since she had been in the medical unit. The government opposed the motion, noting that it had not received any expert report and that two victims were getting on flights that afternoon to testify at sentencing the next day. Defense counsel said that Nademus's medical issue arose about 10 days before the hearing, which prevented the defense from fully preparing the expert for sentencing.

The district court denied the requested continuance in part. The court reasoned that it would go forward with sentencing the next day to allow the victims to testify, and then, "if it's necessary," continue sentencing for up to ten days to permit additional witnesses to testify.

At the sentencing hearing on October 31, 2023, Nademus renewed her request for a continuance after the government presented witness testimony and various exhibits. Under questioning from the court, defense counsel stated that the expert was scheduled to meet with Nademus at 1:00 p.m. the next day. The court rescheduled the hearing to resume in two days, unless Nademus informed the court of a "specific problem" with the expert.

When sentencing resumed on November 2, 2023, Nademus called the forensic accountant to testify. The expert opined that Nademus was entitled to various offsets from the loss amount. The expert said she had been unable to meet with Nademus to confirm potential offsets. The district court sustained several objections to the loss amount, overruled others, and reduced the claimed loss amount by a total of $547,468.75.

Then the district court calculated a total offense level of 30 and a criminal-history category of I, for a resulting guideline range of 97 to 121 months. The court sentenced Nademus to 110 months in prison. Nademus now appeals.

## II.

We review for abuse of discretion the failure to conduct a competency hearing *sua sponte*. *United States v. Wingo*, 789 F.3d 1226, 1236 (11th Cir. 2015).

Due process requires that a defendant be competent to stand trial or enter a guilty plea. *Id.* at 1235. Competence means the

defendant possesses the capacity "to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense." *Id.* (quotation marks omitted).

The district court has an "obligation to *sua sponte* hold a hearing if it has 'reasonable cause' to believe that the defendant 'may' be incompetent." *Id.* at 1236 (quoting 18 U.S.C. § 4241(a)). Reasonable cause is established if "the information known to the trial court at the time of the trial or plea hearing is sufficient to raise a bona fide doubt regarding the defendant's competence." *Tiller v. Esposito*, 911 F.2d 575, 576 (11th Cir. 1990).

We have identified three factors relevant to determine whether there was a "bona fide doubt" about the defendant's competence: "(1) evidence of the defendant's irrational behavior; (2) the defendant's demeanor at trial; and (3) prior medical opinion regarding the defendant's competence to stand trial." *Id.* We do not evaluate each prong in a vacuum, and instead "consider the aggregate of evidence pertaining to all three prongs." *Wingo*, 789 F.3d at 1236. Because there are no fixed or immutable signs indicating the need for further inquiry as to competence, evidence under a single prong may in some circumstances be sufficient to establish a bona fide doubt about a defendant's competence. *Id.*

Here, the record reveals no bona fide doubt about Nademus's competence, and the district court did not abuse its discretion by not *sua sponte* ordering a competency hearing. Nademus concedes there is no evidence of "irrational behavior." Nor was there any prior medical opinion regarding, or any prior reason to

question, Nademus's competence.  Notably, she does not dispute that she was competent to plead guilty.

Rather, Nademus relies solely on her statements and demeanor at the hearing on the motion to withdraw her guilty plea. To be sure, Nademus expressed some confusion at the hearing, and may have hesitated in responding to one of the court's questions, as noted by the prosecutor.  She also told the court that she had recently been in medical for issues with her head and heart, and she described experiencing symptoms of blackouts and dizziness.

But, during the colloquy with the district court, Nademus made clear that her confusion related to why she was at the hearing, given her recent health issues and her request to withdraw the motion to withdraw the guilty plea.  And she told the court clearly and repeatedly that she wished to withdraw her motion to withdraw her guilty plea.  She also consulted with counsel extensively during the hearing.

The district court was in the best position to assess Nademus's demeanor and her understanding of the proceeding.  *See United States v. Lewis*, 40 F.4th 1229, 1242 n.8 (11th Cir. 2022) (noting that "the trial court is in the best position to evaluate the credibility and demeanor" of parties before the court, so appellate review is deferential).  And the court was convinced, with good reason, that Nademus's confusion had been resolved and that her decision to withdraw the motion to withdraw the guilty plea was "knowing and voluntary and done with the close assistance of counsel."  Given Nademus's repetitive affirmations that she wished

to withdraw the motion to withdraw her guilty plea, and the lack of any evidence that her health issues affected her capacity to understand, discuss, and make decisions about her case, we see nothing to suggest that the district court misjudged the facts before it. *See Wingo*, 789 F.3d at 1235.

Accordingly, the district court did not abuse its discretion by not ordering a competency hearing *sua sponte*. *See id*. at 1236; *Williams*, 468 F.2d at 820.

### III.

Nademus next argues that the district court erred by failing to dismiss the superseding indictment. We ordinarily review the denial of a motion to dismiss an indictment on non-constitutional grounds for abuse of discretion. *United States v. Pielago*, 135 F.3d 703, 707 (11th Cir. 1993). As the government notes, though, Nademus waived this challenge by pleading guilty.

"Generally, a voluntary, unconditional guilty plea waives all nonjurisdictional defects in the proceedings." *United States v. Patti*, 337 F.3d 1317, 1320 (11th Cir. 2003). Thus, "[w]hen a defendant enters an unconditional guilty plea, [she] may raise on appeal only a narrow class of challenges to [her] conviction." *United States v. Williams*, 29 F.4th 1306, 1313–14 (11th Cir. 2022). She may assert that her plea was involuntary, that the statute of conviction is unconstitutional, or that the court lacks subject-matter jurisdiction. *Id*.; *see United States v. Betancourth*, 554 F.3d 1329, 1332 (11th Cir. 2009) ("[C]hallenges to the subject matter jurisdiction of the federal courts cannot be waived."). But "a valid guilty plea relinquishes

any claim that would contradict the admissions necessarily made upon entry of a voluntary plea of guilty." *Class v. United States*, 583 U.S. 174, 183 (2018) (quotation marks omitted).

In her plea agreement, Nademus admitted she had "solicited individuals to invest in false and fraudulent high-yield investment programs and used the fraud proceeds to perpetuate the scheme for her own personal enrichment." She admitted she had "falsely and fraudulently represent[ed] that the funds would be used for various projects" and that "the false and fraudulent investments were safe for various reasons." And she admitted she had "memorialized the false and fraudulent investment opportunities to victim-investors by so-called promissory notes, balloon promissory notes, and/or memos of understanding."

Nademus now says that, because these agreements charged criminally high interest rates under state law, the purported victims were actually "criminal loan shark[s]," and she is somehow absolved of criminal liability. But this argument, among its other problems[1], is waived because it flatly contradicts the admissions she made upon the entry of her voluntary, unconditional guilty

---

[1] Nademus not only fails to explain how the alleged illegality of the contracts has any bearing on the elements of fraud, but she also offers no support for her suggestion that the district court had the pretrial authority to dismiss the superseding indictment based on information not contained in the indictment. *See United States v. Salman*, 378 F.3d 1266, 1268 (11th Cir. 2004) (explaining that the sufficiency of an indictment is determined from its face, and that courts have no authority to dismiss an indictment based on a pretrial examination of the evidence).

plea. *See Class*, 583 U.S. at 183; *Patti*, 337 F.3d at 1320. And her briefing does not clearly "raise any voluntariness challenge to her conviction or argue that the government lacked the power to criminalize [her] conduct." *Williams*, 29 F.4th at 1314.

## IV.

Finally, Nademus argues that the district court abused its discretion by failing to grant a continuance, given her health issues and her financial expert's inability to meet with her in person before sentencing. She argues that the appeal waiver should not apply because her argument implicates the denial of her due-process right to adequately prepare for sentencing. The government responds that (1) her scheduling objection does not present a constitutional concern, and (2) any due-process claim is covered by the appeal waiver, in any case.

We agree with the government that Nademus falls well short of establishing a due-process violation. We therefore assume without deciding that Nademus's due-process argument is not barred by the appeal waiver. *See, e.g.*, *United States v. Blick*, 408 F.3d 162, 171–72 (4th Cir. 2005) ("[A] defendant's agreement to waive appellate review of his sentence is implicitly conditioned on the assumption that the proceedings following entry of the plea will be conducted in accordance with constitutional limitations.").

We review a district court's denial of a continuance for abuse of discretion. *United States v. Bowe*, 221 F.3d 1183, 1189 (11th Cir. 2000). Defendants have a due-process right to a fair and reasonable opportunity to prepare a defense. *See id.* at 1190; *United*

*States v. Baker*, 432 F.3d 1189, 1248 (11th Cir. 2005). So in some circumstances the denial of a continuance can violate due process. *Baker*, 432 F.3d at 1248.

But "not every denial of a request for more time . . . violates due process even if the party fails to offer evidence." *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964). No "mechanical test" applies to determine "when a denial of a continuance is so arbitrary as to violate due process." *Id.* Instead, the "issue must be decided on a case by case basis in light of the circumstances presented, particularly the reasons for continuance presented to the trial court at the time the request is denied." *United States v. Darby*, 744 F.2d 1508, 1521 (11th Cir. 1984) (quotation another source). To prevail, the defendant must show that the denial of a continuance "resulted in specific substantial prejudice." *United States v. Verderame*, 51 F.3d 249, 251 (11th Cir. 1995).

In assessing a continuance request based on a claim of inadequate preparation time, relevant factors include "the quantum of time available for preparation, the likelihood of prejudice from denial, the accused's role in shortening the effective preparation time, the degree of complexity of the case, and the availability of discovery from the prosecution." *United States v. Garmany*, 762 F.2d 929, 936 (11th Cir. 1985) (quoting another source). Since Nademus's claim relates to potential witness testimony, we are also guided by factors including the "diligence of the defense . . . , the specificity with which the defense is able to describe [the] expected

knowledge or testimony, the degree to which such testimony is expected to be favorable to the accused, and the unique or cumulative nature of the testimony." *Id.* (quoting another source).

Here, the district court did not abuse its discretion. Defense counsel first raised Nademus's health issues as grounds for a continuance only one day before sentencing, even though they arose ten days earlier. What's more, counsel never explained with any specificity how a meeting between Nademus and her expert would affect the expert's testimony on potential offsets, or why Nademus could not have offered her input through alternative means. *See Garmany*, 762 F.2d at 936. And the expert otherwise had ample time and opportunity to review the underlying records.

The district court also had strong administrative reasons to go forward with sentencing the next day because two victims were traveling to testify. The court offered a reasonable compromise, stating that it would continue the hearing if necessary to permit Nademus's expert time to prepare. Then, at sentencing the next day, defense counsel informed the court that Nademus was scheduled to meet with the expert the following day, so the court continued the hearing for the day after that, unless Nademus brought a "specific problem" regarding the expert to the court's attention. And when the hearing resumed, Nademus called the expert to testify without any further objection.

Nademus cannot "show that the denial of the motion for continuance was an abuse of discretion which resulted in specific substantial prejudice." *Verderame*, 51 F.3d at 251. The district

court's continuance of two days was reasonable, since it appeared that the expert would be able to speak with Nademus in person before her testimony, and Nademus did not raise any specific problem or objection when the hearing resumed.  Regardless, aside from a bare suggestion that the potential testimony was relevant to offset calculations, Nademus fails to make any showing of "specific" prejudice.  The expert testified extensively about loss, and the court made numerous rulings, which Nademus expressly waived her right to challenge on appeal through the appeal waiver in her plea agreement.  And nothing in the record suggests that Nademus lacked a reasonable opportunity to prepare a sentencing defense more broadly.  Nademus has not shown that she suffered specific substantial prejudice in these circumstances.

For these reasons, the district court did not abuse its discretion in denying a further continuance based on lack of sufficient time to prepare.

**AFFIRMED.**